UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            Case No. 11-20551

SADAR ASHRAFKHAN (D-12),

    Defendant.
                                                /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS BASED UPON AN ILLEGAL SEARCH AND REQUEST FOR AN EVIDENTIARY HEARING**

Now before the court is Defendant Sadar Ashrafkhan's March 10, 2015 Motion to Suppress Based upon an Illegal Search and Request for an Evidentiary Hearing (Dkt. # 993), in which Defendant requests that the court suppress "evidence seized during the search of Defendant's residence, storage unit, and business offices, and from his bank accounts and safety deposit boxes." (*Id.* at 4659.) Defendant and others were charged in a thirteen count Second Superseding Indictment issued on March 20, 2013. (Dkt. # 189.) Four counts were brought against Defendant, including: (1) conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 846 (Count 1); (2) health care fraud conspiracy, in violation of 18 U.S.C. §§ 1347, 1349 (Count 2); and (3) two counts of monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957 (Counts 9 and 10). (*Id.* at 840-54.)

This matter is fully briefed, and no hearing is needed. *See* E.D. Mich. LR 7.1(f)(2). Defendant's motion, in the main, asserts without explanation or contrary

evidence that various statements attributed to confidential informants in support of the warrants were "false," included "untrue" details, or were "misleading." It asserts that the informants were, in general, not credible, were moved by incentives, or provided otherwise suspect information. Such assertions amount to no more than argument, and are wholly insufficient to justify a hearing or further exploration. As explained below, the affidavits supporting the warrants were entirely sufficient to establish probable cause. The motion will be denied.

## I. BACKGROUND

On July 13, 2011, agents of the Drug Enforcement Administration (the "DEA") conducted a search of Defendant's residence located at 979 Terrance Lane, Ypsilanti, Michigan; storage unit located at 1638 S. Newburgh Road, Westland, Michigan; business office located at 16000 W. 9 Mile Road, Suites 305, 311, and 313, Southfield, Michigan; and business office located at 148 S. Main Street, Suite 103C, Mount Clemens, Michigan. (Dkt. # 993, Pg. ID 4660.) On the same date, agents of the Internal Revenue Service (the "IRS") conducted a search of Defendant's Bank of America bank accounts, JP Morgan Chase bank account, and safety deposit boxes. (*Id.*) These searches were based upon a Search Warrant and Seizure (the "Premises Warrant") and a Seizure Warrant (the "Bank Warrant"), both issued by Magistrate Judge R. Steven Whalen on July 12, 2011. (Dkt. # 993-1, Pg. ID 4679; Dkt. # 993-2, Pg. ID 4706.) The probable cause supporting the Premises Warrant was established by a sworn affidavit by DEA Task Force Officer Patrick DeBottis, and the probable cause supporting the Bank Warrant was established by a sworn affidavit by IRS Special Agent Anthony Ramos. (Dkt. # 993-1, Pg. ID 4687; Dkt. # 993-2, Pg. ID 4711.) The two affidavits are

substantially the same. In his motion, Defendant claims that these affidavits contain a number of false and misleading statements. (Dkt. # 993, Pg. ID 4662-68.)

## II. STANDARD

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "There is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the 'factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur." *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)); *see United States v. Johnson*, 645 F.2d 865, 867 (10th Cir. 1981) ("[A]ffidavits in support of a search warrant[] are to be read in a practical and commonsense manner rather than hypertechnically."). "To find probable cause, the law does not require that we rule out every conceivable explanation other than a suspect's illegal conduct. Instead, [the court] need only consider whether there are facts that . . . could lead a reasonable person to believe that an illegal act has occurred or is about to occur." *Strickland*, 144 F.3d at 416 (internal quotation marks and citation omitted).

"[T]he magistrate's probable cause determination should be afforded great deference." *Rodriguez-Suazo*, 346 F.3d at 643 (internal quotation marks omitted). It is "the duty of a reviewing court . . . simply to ensure that the magistrate had a 'substantial

basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155-56. "In order to obtain a [*Franks*] hearing, the defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit," *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002), and that "the exclusion of the allegedly false statement . . . results in a lack of probable cause." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998). It is the defendant's burden to "specifically point to the disputed portions of the challenged affidavit, and . . . support these charges with an offer of proof." *Stewart*, 306 F.3d at 304. "If at the hearing, the defendant can show by a preponderance of the evidence that the affiant either knowingly or with reckless disregard included a false statement in the affidavit, then any evidence and fruits of the search would be excluded." *Rodriguez-Suazo*, 346 F.3d at 648.

### III. DISCUSSION

**A. Alleged False and Misleading Statements**

Defendant contends that "[t]here are numerous falsehoods in both the Premises Warrant and the Bank Warrant" and that affidavits contain "unreliable, unverified, and non-credible statements from confidential informants and cooperating Government sources, including [informants referred to as] DEA-1, 2, 3, 4, 5, and 6." (Dkt. # 993, Pg. ID 4661-62.)  Defendant identifies the following statements, which are contained in both Officer DeBottis's and Agent Ramos's affidavits, as false or misleading:

- DEA-1's statement that "nominee patients . . . [were] never examined in person." (Dkt. # 993, Pg. ID 4662-63; Dkt. # 993-1, Pg. ID 4690; Dkt. # 993-2, Pg. ID 4714.)

- DEA-1's statement that "parties" were held to "locate nominee patients." (Dkt. # 993, Pg. ID 4663; Dkt. # 993-1, Pg. ID 4690; Dkt. # 993-2, Pg. ID 4715.)

- DEA-1's statement that "bogus medical evaluation forms" were used to "justify the prescriptions of controlled substances." (Dkt. # 993, Pg. ID 4664; Dkt. # 993-1, Pg. ID 4691; Dkt. # 993-2, Pg. ID 4715.)

- DEA-2's and DEA-3's statements that "[t]he licensed doctor will also write prescriptions for non-controlled substances in conjunction with controlled substances in an effort to make it appear that controlled substances were not the sole object of the scheme." (Dkt. # 993, Pg. ID 4664; Dkt. # 993-1, Pg. ID 4692; Dkt. # 993-2, Pg. ID 4717.)

- DEA-2's and DEA-3's statements that Defendant "will provide the schedule II and III controlled substance prescriptions . . . to the Patient Recruiters." (Dkt. # 993, Pg. ID 4665; Dkt. # 993-1, Pg. ID 4693; Dkt. # 993-2, Pg. ID 4718.)

- DEA-2's and DEA-3's statements that Defendant "will frequently tell the doctor to prescribe higher doses of the controlled substances so as to maximize profits." (Dkt. # 993, Pg. ID 4665-66; Dkt. # 993-1, Pg. ID 4693; Dkt. # 993-2, Pg. ID 4718.)

- DEA-2's and DEA-3's statements that Defendant "is provided with a portion of the profits from the street level distribution." (Dkt. # 993, Pg. ID 4666; Dkt. # 993-1, Pg. ID 4693; Dkt. # 993-2, Pg. ID 4719.)

- DEA-2's and DEA-3's statements that Defendant "will frequently tell the doctor to prescribe higher doses of the controlled substances so as to maximize profits." (Dkt. # 993, Pg. ID 4665-66; Dkt. # 993-1, Pg. ID 4693; Dkt. # 993-2, Pg. ID 4718.)

- The entirety of paragraph 14 of the Premises Warrant and paragraph 15 of the Bank Warrant, which state:

    > DEA-4 identified the following licensed medical physicians involved with the ASHRAFKHAN drug trafficking conspiracy; Dr. Mark MARCANO, Dr. Ravi IYER, Dr. Paul KELLY and Dr. ADOLFO PAMATMAT. Affiant verified this information through the subsequent execution of State of Michigan and federal search warrants, reviewing seized documents, post Miranda interviews of conspirators involved with the ASHRAFKHAN organization and a review of MAPS (Michigan Automated Prescription System) reports. DEA-4 stated that each of the aforementioned license doctors were given specific instructions by ASHRAFKHAN to prescribe the schedule II narcotic "Oxycontin" as well as the maintenance drugs to each nominee patient as requested by the patient recruiters. DEA-4 stated that he/she was present during these conversations and was involved with the patient parties where the prescriptions were distributed to the nominee patients and patient recruiters. Based on the information obtained from DEA-4, and undercover operations utilizing DEA-4, affiant has obtained and executed approximately six federal search warrants resulting in the seizure of numerous nominee patient files at each location. These files contained insurance records, photocopies of social security cards and driver's licenses as well as prescriptions for controlled substances. Agents also seized approximately $50,000.00 in drug proceeds in addition to firearms and other drug related assets. Agents also seized papers listing name "Compassionate Doctors PC". Affiant therefore finds DEA-4 to be reliable and credible.

    (Dkt. # 993, Pg. ID 4666; Dkt. # 993-1, Pg. ID 4695-96; Dkt. # 993-2, Pg. ID 4722.)

- DEA-5's statement that Defendant "forc[ed] patient recruiters to enroll their nominee patients into physical therapy." (Dkt. # 993, Pg. ID 4666; Dkt. # 993-1, Pg. ID 4697; Dkt. # 993-2, Pg. ID 4724.)

- DEA-5's statement that Defendant "does self-referrals." (Dkt. # 993, Pg. ID 4667; Dkt. # 993-1, Pg. ID 4697; Dkt. # 993-2, Pg. ID 4724.)

- DEA-5's statement that Defendant "would have the nominee patients sign for the maximum [sixteen] physical therapy visits." (Dkt. # 993, Pg. ID 4667; Dkt. # 993-1, Pg. ID 4697; Dkt. # 993-2, Pg. ID 4724.)

- DEA-5's statement that Defendant "compensated DEA-5 with cash payments and filled out signed prescriptions for Schedule III narcotics." (Dkt. # 993, Pg. ID 4668; Dkt. # 993-1, Pg. ID 4697; Dkt. # 993-2, Pg. ID 4724.)

### B. Reliance on Confidential Informants

Defendant claims that it was an error for the Magistrate Judge to find probable cause based on statements made by the confidential informants, including those challenged by Defendant and listed above, because the statements made by the confidential informants are unreliable and not credible. When considering an application for a search warrant based on information provided by confidential informants, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *United States v. Rodriguez-Suazo*, 346 F.3d 637, 646 (6th Cir. 2003) ("When the probable cause for a search warrant is based upon information provided by a confidential informant, we must consider the informant's veracity, reliability, and 'basis of knowledge.'"). "Another factor to consider is law enforcement's corroboration of the informant's tip. The Supreme Court has stated that information provided by a proven and reliable informant, along with police corroboration of the tip, is

sufficient to establish the necessary probable cause." *Rodriguez-Suazo*, 346 F.3d at 646 (citation omitted).

The affidavits include details related to the informants' veracity, reliability, and bases of knowledge. For example, regarding DEA-1, the affidavits state that DEA-1 has provided Officer DeBottis and other DEA agents with information in the past that has led to "at least 10 federal and State of Michigan search warrants, the seizure of marijuana, cocaine, firearms and the arrest of persons for drug offenses. Affiant therefore finds DEA-1 to be reliable and credible." (Dkt. # 993-1, Pg. ID 4691; Dkt. # 993-2, Pg. ID 4716.) DEA-1 also identified DEA-2 and DEA-3 as patient recruiters to the DEA; DEA-2 and DEA-3 later cooperated with the DEA and corroborated many of DEA-1's statements. (Dkt. # 993-1, Pg. ID 4691-92; Dkt. # 993-2, Pg. ID 4716-17.).

Regarding DEA-2 and DEA-3, the affidavits state that "[t]he information provided by DEA-2 and DEA-3 has led to the obtaining and executing of approximately 13 federal and State of Michigan search warrants, the seizure of nominee patient medical charts, blank signed prescription pads, other documentary evidence linking co conspirators to this drug conspiracy, firearms and the arrest of persons for drug offenses. Affiant therefore finds DEA-2 and DEA-3 to be reliable and credible." (Dkt. # 993-1, Pg. ID 4693-94; Dkt. # 993-2, Pg. ID 4718-19.). These seizures corroborate DEA-2's and DEA-3's statements; likewise, these informants corroborate each other.

Next, the affidavits state that DEA-4 was hired by Defendant as an office assistant and, as stated above in the excerpted paragraph on page 6, DEA-4 has provided information to the DEA which has resulted in the seizure of, *inter alia*, relevant

nominee patient files, leading the affiants to deem "DEA-4 to be reliable and credible." (Dkt. # 993-1, Pg. ID 4696; Dkt. # 993-2, Pg. ID 4722.).

According to the affidavits, DEA-5, who served as a medical assistant to Defendant, provided information to the DEA "which was confirmed by undercover audio and video tapes," leading the affiants to find "DEA-5 to be reliable and credible." (Dkt. # 993-1, Pg. ID 4697-98; Dkt. # 993-2, Pg. ID 4724.)

Last, according to the affidavits, over a five month period, DEA-6 engaged in the alleged drug trafficking scheme in an undercover capacity under the direction of DEA agents. The information provided by DEA-6 "was confirmed by undercover and video tapes," and the affiants, therefore, found DEA-6 to be reliable and credible. (Dkt. # 993-1, Pg. ID 4698; Dkt. # 993-2, Pg. ID 4726.).

In sum, the affidavits contain ample evidence related to the confidential informants' veracity, reliability, and bases of knowledge. Moreover, much of the information provided by these informants and contained in the affidavits is corroborated by other informants, seized items, and/or audio and video recordings. Accordingly, their statements, as presented in the affidavits, are sufficient to establish the necessary probable cause for the search warrants. *See Rodriguez-Suazo*, 346 F.3d at 646.

### C. False and Misleading Statements

Defendant's motion contains numerous conclusory assertions that the statements listed above are false or misleading. He provides no evidence supporting his allegations of falsehood. Significantly, Defendant does not accuse Officer DeBottis or Agent Ramos of making false statements knowingly, intentionally, or with reckless disregard for the truth. Rather, Defendant claims that the confidential informants'

statements which were summarized in the affidavits were unreliable and untrue. First, as discussed above, these statements are sufficiently credible and reliable to have established probable cause for the search warrants. Second, even if some of these statements were indeed false, "[i]t is not enough for defendants to show that the affidavit contains false information." *United States v. Giacalone*, 853 F.2d 470, 475 (6th Cir. 1988). "[I]n order to obtain a Franks hearing, [Defendant] must make a 'substantial preliminary showing' that the false statements originated with the government affiant, not with the informants, or that the government affiant repeated the stories of the affiant with reckless indifference to the truth." *Id.* at 475-76; *Rodriguez-Suazo*, 346 F.3d at 648 ("Even if some of the information contained in the search warrant ultimately could be shown to be false, [the defendant] provided no evidence that [the affiant] intentionally or recklessly misrepresented facts in order to secure the search warrant."). Where a motion to suppress is based on accusations of false statements contained in an affidavit, absent any showing that the *affiant* knowingly, intentionally, or recklessly made false statements in his affidavit, a *Franks* hearing is not warranted. *Giacalone*, 853 F.2d at 476.

As the Supreme Court emphasized in *Franks*, to warrant an evidentiary hearing, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof . . . . *The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Franks*, 438 U.S. at 171 (emphasis added). Because Defendant does not make a substantial preliminary showing that Officer DeBottis or Agent Ramos made a false statement knowingly, intentionally, or

10

with reckless disregard for the truth in their affidavits, and because the search warrants are supported by probable cause, Defendant's motion will be denied.

## IV. CONCLUSION

IT IS ORDERED that Defendant Sardar Ashrafkhan's Motion to Suppress Based upon an Illegal Search and Request for an Evidentiary Hearing (Dkt. # 993) is DENIED.

          s/ Robert H. Cleland
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated: April 21, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 21, 2015, by electronic and/or ordinary mail.

          S/Lisa Wagner
          Case Manager and Deputy Clerk
          (313) 234-5522