UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                           Case No. 11-20551

SARDAR ASHRAFKHAN,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

Defendant Sardar Ashrafkhan was convicted by a jury on July 2, 2015, of conspiracy to distribute controlled substances, 21 U.S.C. §§ 841(a)(1), 846, healthcare fraud conspiracy, 18 U.S.C. §§ 1347, 1349, and money laundering, 18 U.S.C. § 1957. (ECF No. 1671, PageID.16938.) The court sentenced Defendant to 276 months imprisonment. (*Id.*)

Defendant has filed an "Emergency Motion for Compassionate Release." (ECF No.1888.) He argues that the health risk presented by the Coronavirus Disease ("COVID-19") at his location of confinement, FCI Milan, as well as his family circumstances, warrants compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The matter has been thoroughly briefed. (ECF Nos. 1888, 1903, 1910, 1916.) The court has reviewed the record, and for the reasons provided below, Defendant's motion will be denied.

The federal compassionate release statute has "three substantive requirements." *United States v. Hampton*, 985 F.3d 530, 532 (6th Cir. 2021). First, the court may

reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). Second, the sentencing factors provided under 18 U.S.C. § 3553(a) must weigh in favor of a sentence reduction. Third, a sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

A motion requesting a prisoner's compassionate release may be filed either by the Bureau of Prisons ("BOP") or by the prisoner himself. 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit held in *United States v. Jones*, 980 F.3d 1098, 1110-11 (6th Cir. 2020), that when a prisoner moves for compassionate release himself there is no "applicable policy statement[] issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Thus, when a prisoner moves for compassionate release, the requirement in § 3582(c)(1)(A) that a sentence reduction be "consistent with [a] policy statement[]" does not apply, and courts are to ignore it. *Jones*, 980 F.3d at 1111; *accord United States v. Elias*, 984 F.3d 516, 519-20 (6th Cir. 2021). To obtain compassionate release, a prisoner must nevertheless present "extraordinary and compelling" circumstances and must have § 3553(a)'s sentencing factors that weigh in his favor. 18 U.S.C. § 3582(c)(1)(A); *see Jones*, 980 F.3d at 1108, 1111 (holding that a court has "full discretion to define 'extraordinary and compelling'" and must also "determine whether, in its discretion, [a] reduction . . . is warranted" under § 3553(a)).

Defendant's circumstances are not extraordinary or compelling. 18 U.S.C. § 3582(c)(1)(A). "Extraordinary" is defined as "exceptional to a very marked extent." *Extraordinary*, Webster's Third International Dictionary, Unabridged (2020). "Compelling" is defined as "tending to convince or convert by or as if by forcefulness of

evidence." *Compelling*, Webster's Third International Dictionary, Unabridged (2020). Courts have interpreted "extraordinary" in the context of compassionate release as "beyond what is usual, customary, regular, or common," and a "'compelling reason" as "one so great that irreparable harm or injustice would result if the relief is not granted." *United States v. Sapp*, Case No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020) (Leitman, J.); *United States v. Murphy*, Case No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020) (Cox, J.).

On January 28, 2021, the BOP offered Defendant a COVID-19 vaccine. He refused to receive the vaccine and remains unvaccinated. (ECF No. 1953, PageID.19991.) It is unclear whether Defendant was offered the Pfizer or the Moderna vaccine; however, available scientific evidence demonstrates that both the Pfizer and the Moderna vaccines are extraordinarily effective at reducing the risk of COVID-19 infection. *See*, *e.g.*, *Pfizer-BioNTech COVID-19 Vaccine Overview and Safety*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (last visited June 8, 2021) (noting that in clinical trials the Pfizer vaccine was "95% effective at preventing laboratory-confirmed COVID-19 illness in people without evidence of previous infection."); *Moderna COVID-19 Vaccine Overview and Safety,* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html (last visited June 8, 2021) (noting that in clinical trials the Moderna vaccine was "94.1% effective at preventing laboratory-confirmed COVID-19 illness in people who received two doses who had no evidence of being previously infected."); Mark G. Thompson et al., *Interim Estimates of Vaccine Effectiveness* (2021)

3

(finding that mRNA vaccines, such as the Pfizer vaccine, are 90% effective at preventing both asymptomatic and symptomatic COVID-19 infections); *Real World Effectiveness of Pfizer and Moderna Vaccines: Microbial Minutes,* American Society for Microbiology, https://asm.org/Videos/Real-World-Effectiveness-of-Pfizer-and-Moderna-Vac (last visited June 8, 2021) (finding that mRNA vaccines, such as the Moderna vaccine, are "80% effective at preventing SARS-CoV-2 infection 14 days or more after the first dose and 90% effective at preventing SARS-CoV-2 infection 14 days or more after the second dose."); *Pfizer and BioNTech Confirm High Efficacy and No Serious Safety Concerns*, Business Wire, https://www.businesswire.com/news/home/20210401005365/en/ (last visited June 8, 2021) (describing a Pfizer study which found that its vaccine was "100% effective in preventing severe disease as defined by the U.S. Centers for Disease Control"); The court is aware of no scientifically derived evidence showing that there is a material risk of severe complications or death from COVID-19 to fully vaccinated individuals.

The court does not find that the existence of COVID-19, and the possibility Defendant could contract the disease in the future, present extraordinary and compelling circumstances. 18 U.S.C. § 3582(c)(1)(A). Defendant was given the opportunity to receive a safe, effective, and reliable vaccine, and he refused. Centers for Disease Control and Prevention, *supra*; Thompson et al, *supra*; Business Wire, *supra*. American Society for Microbiology, *supra.* (ECF No. 1953, PageID.19991.)

Defendant does not convincingly establish that his conditions are exceptional so as to demand immediate release when he chooses to prevent prison officials from mitigating dangers to his health and safety. 18 U.S.C. § 3582(c)(1)(A). A prisoner will

4

not be heard to complain of the risk of severe illness while he simultaneously avoids basic, sensible precautionary measures such as vaccination. Allowing a prisoner to qualify for compassionate release in the face of his refusal to receive a COVID-19 vaccine would serve to discourage prisoners from becoming vaccinated. This court is exceedingly hesitant to provide prisoners an incentive to *increase* their risk of contracting COVID-19 and developing severe symptoms. Such a result would be plainly counter-productive and dilute the ameliorative purposes of compassionate release.

Consistent with this reasoning, courts have regularly denied motions for compassionate release on the basis of COVID-19 when prisoners have declined to receive a COVID-19 vaccine. *See*, *e.g.*, *United States v. Toney*, Case No. 17-20184, 2021 WL 1175410, at *1 (E.D. Mich. Mar. 29, 2021) (Levy, J.) ("Courts in this circuit have consistently refused to find extraordinary and compelling medical circumstances when a defendant declines the COVID-19 vaccine."); *United States v. Carter,* Case No. 13-20422, 2021 WL 1310784, at *3 (E.D. Mich. Apr. 8, 2021) (Murphy, J.) (holding that a prisoner did not present extraordinary or compelling circumstances where the prisoner "declined to receive the COVID-19 vaccine"); *United States v. Cohen*, Case No. 09-20326, 2021 WL 1575300, at *2 (E.D. Mich. Apr. 22, 2021) (Edmunds, J.) ("The Court agrees with courts that have found that access to the vaccine mitigates the health concerns that may otherwise constitute extraordinary and compelling reasons in light of the pandemic."); *United States v. MacGregor*, Case No. 15-20093, 2021 WL 1378786, at *1 (E.D. Mich. Apr. 12, 2021) (Leitman, J.) (holding that a prisoner "failed to show that there were extraordinary and compelling reasons justifying his release because a COVID-19 vaccine had been offered to him, and he declined to take the vaccine").

Furthermore, and despite Defendant's choice to refuse a COVID-19 vaccine, prison authorities have substantially reduced the risk of spread and exposure to COVID-19 through the vaccination of other inmates. Defendant is confined at FCI Milan. Out of 1275 inmates incarcerated at the prison, 562 are fully vaccinated. *FCI Milan*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/mil/ (last visited June 8, 2021); *COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited June 8, 2021). Consequently, there is only one active case of COVID-19 among inmates at FCI Milan. *COVID-19: Coronavirus*, *supra*.

Defendant has also filed a supplemental brief arguing his need to serve as a caretaker for his wife presents an additional extraordinary and compelling reason for his release. (ECF No. 1910.) Defendant claims that because his 25-year-old son, who had been living with and caring for Defendant's wife, died in a 2020 car accident, Defendant is the only remaining available caretaker for his wife. (*Id.*, PageID.19620-21.) While the Sentencing Commission's policy statement is not binding, *see Jones*, 980 F.3d at 1110-11, the court will look to the statement to help guide its analysis, *see* U.S.S.G. § 1B1.13. In the commentary to § 1B1.13, the Sentencing Commission defines one extraordinary and compelling reason as "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caretaker for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. 1(C). *See also United States v. Corley,* No. 3:13-CR-00097-9, 2021 WL 119640, at *1 (M.D. Tenn. Jan. 13, 2021) (noting that compassionate release based on "family circumstances. . . typically requires a finding

6

that the Defendant is the only available caregiver") (citing *United States v. Lisi*, 440 F. Supp. 3d, 246, 252 (S.D.N.Y. 2020).

Examining the record, it is clear that Defendant is not, as claimed, the *only* available caregiver for his wife. Defendant has four living adult children who could assist in providing such care. Two of these four appear to work as teachers at a nonprofit Islamic Institute in the metro area. (ECF No. 1910, PageID.19620 n.5.) The third works at the Flint Islamic Center. The fourth is a medical student. All four of the children reside in Michigan, three of them reside in metro Detroit near their mother's residence. (*Id.*) By all accounts it is fair to say that the family is large, and that it appears close. While certain inconveniences may result, the court sees no unique circumstance or other impediment preventing these siblings from sharing caretaking and financial support responsibilities like millions of Americans do with aging parents.[1] Indeed, at the time of the brief's filing, another of Defendant's sons, and a daughter-in-law, were then "staying with his mother for the time being" and were able to provide care. (*Id.*, PageID.19621.)

While Defendant claims that a lack of financial resources makes his sons "unavailable," (*see Id.,* PageID.19620) the government points out that financial need is a separate issue (*see* ECF No. 1916, PageID.19696, 19697). The court finds that "[t]he hardship to [Defendant's] family that may result [from incarceration] is unfortunate, but

---

[1] *See* Renee Stepler, 5 facts about family caregivers, Pew Research Center, (Nov. 18, 2016), https://www.pewresearch.org/fact-tank/2015/11/18/5-facts-about-family-caregivers/ (noting that there are "40.4 million unpaid caregivers of adults ages 65 and older in the United States" and that [a]bout six-in-ten adults with at least one parent age 65 or older say they have helped their parent with errands, housework or home repairs") (last visited 6/10/2021).

not unusual." *United States v. Cole*, No. 18-20237, 2021 WL 194194, at *3 (E.D. Mich. Jan. 20, 2021) (Parker, J.) "Often, a defendant's family's needs can be met through other family members, neighbors, faith groups, community organizations and government agencies." *Id.* It appears to the court that any "lack of financial resources" allegedly rendering one or more of the sons "unavailable" to assist their mother is a byproduct of choices made by them, and not of anything imposed from without.

Furthermore, as pointed out by the government, Defendant's wife is unlikely in any event to meet the definition of incapacitated. (*See* ECF No. 1916, PageID.19697.) Defendant's briefing states that his wife does not drive due to heart issues and medications and is now suffering through grief issues due to the death of her son. (ECF No. 1910, PageID.19617-18.) However, merely being unable to operate a motor vehicle does not come close to meeting the definition of incapacitation. And Defendant has also failed to cite any precedent showing that his wife's depressed mental state, likely temporary, immediately following the death of her youngest son constitutes incapacitation. *See, e.g., United States v. Kimbrell*, No. 3:19-CR-00064, 2020 WL 3972746, at *4 (M.D. Tenn. July 14, 2020) (finding that Defendants' temporary blindness due to a treatable cataract was not an "extraordinary and compelling" reason justifying release).

In all, with Defendant refusing to receive a COVID-19 vaccine, there is no more than an exceedingly slim possibility that COVID-19 will spread through FCI Milan, that prison officials will then fail to contain the outbreak, that Defendant will contract COVID-19, and that he will subsequently develop life-threatening symptoms.

8

Such speculative possibilities of harm—almost entirely *avoidable* harm—do not justify the extraordinary remedy of early release from a proper sentence. 18 U.S.C. § 3582(c)(1)(A). Furthermore, the loss of Defendant's son and its effects on Defendant's wife do not create extraordinary and compelling circumstances. *See id.* Because there are no extraordinary and compelling reasons for release, the court need not consider Defendant's § 3553 sentencing factors. *See Elias*, 984 F.3d at 518-19 ("When any of the . . . prerequisites listed in [Section] 3582(c)(1) is lacking," courts "do not need to address the others."). Accordingly,

IT IS ORDERED that Defendant's "Emergency Motion to Reduce Sentence" (ECF No. 1888) is DENIED.

        s/Robert H. Cleland  /
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated:  June 15, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 15, 2021, by electronic and/or ordinary mail.

        s/Lisa Wagner  /
        Case Manager and Deputy Clerk
        (810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\11-20551.ASRAFKHAN.MotionforCompassionateRelease.NF.AAB.RHC.3.docx